**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Otto KERNER, Jr., Defendant.**

**Appeal of ESTATE OF Otto KERNER,**
**Jr. and its Executor, Anton**
**J.C. Kerner.**

**No. 88–2469.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1989.

Decided Feb. 9, 1990.

David J. Stetler, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, for U.S.

Thomas P. Sullivan, Jenner & Block, Chicago, Ill., Thomas E. Patton, Mitchell R. Kreindler, Schnader, Harrison, Segal & Lewis, Washington, D.C., for Otto Kerner, Jr., and Anton J.C. Kerner.

Before EASTERBROOK and MANION, Circuit Judges, and GRANT, Senior District Judge.[*]

MANION, Circuit Judge.

Anton J.C. Kerner, executor of the estate of his father Otto Kerner, Jr., seeks a writ of error coram nobis to vacate his father's 1973 convictions for mail fraud, conspiracy, tax evasion and perjury. The estate also seeks return of approximately $90,000 in fines and judgments it claims were wrongfully paid because of the convictions. The district court denied relief under this court's holding in *United States v. Keane*, 852 F.2d 199 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989). Kerner's estate argues that we should repudiate *Keane*. While we disagree with Kerner's assessment of *Keane*, we conclude that Kerner's estate lacks standing to seek coram nobis relief. We therefore affirm.

## I. BACKGROUND

Otto Kerner, Jr., was elected governor of Illinois in 1961. He resigned in 1968 to accept appointment as a judge on the United States Court of Appeals for the Seventh Circuit. He remained a judge for this court until his 1973 conviction in federal court on counts of bribery, conspiracy, mail fraud, perjury, false statements and tax fraud. The bribery convictions were reversed on appeal. *United States v. Isaacs*, 493 F.2d 1124 (7th Cir.1974), *cert. denied sub nom., Kerner v. United States*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1975). Kerner served less than eight months in prison and paid $20,000 in fines. He died in 1976.

Kerner's son Anton, the executor of his father's estate, sought a writ of error coram nobis following the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In *McNally* the Court held that 18 U.S.C. § 1341, the mail fraud statute, did not criminalize schemes to defraud persons of "intangible rights"; the Court concluded that Congress intended to protect only property rights. Congress responded by enacting 18 U.S.C. § 1346, which restored what *McNally* took away. "Ever since *McNally* federal courts have been inundated with requests for relief by the thou-

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

sands of persons convicted of depriving their employers of the intangible right to honest services." *United States v. Bush,* 888 F.2d 1145 (7th Cir.1989).

Kerner is one such person, with a few twists. To begin, Kerner has been dead 13 years. His estate is bringing this action, and supposedly would receive the benefits of any relief granted by vacation of his convictions. Therefore standing is an issue. Second, Kerner was convicted of much more than mail fraud. His estate posits a sort of domino theory, under which Kerner's convictions for conspiracy, perjury, false statements and tax evasion are knocked down one after another by the invalid mail fraud conviction. If we find, however, that the other convictions are unaffected, the extraordinary remedy of coram nobis to vacate only the mail fraud conviction is probably unavailable. Finally, Kerner's estate filed this action in district court prior to our decision in *Keane,* but initiated the appeal after *Keane,* seemingly with the hope that the Supreme Court would reverse that decision. That having failed,[1] Kerner's estate now asks this court to repudiate the holding of a 1988 case followed several times in the interim. See, e.g., *United States v. Bonansinga,* 855 F.2d 476 (7th Cir.1988); *United States v. Doe,* 867 F.2d 986 (7th Cir.1989); *United States v. Barber,* 881 F.2d 345 (7th Cir. 1989). This appeal is questionable because the driving force behind *Keane* was our prudential concern for finality and the promotion of judicial economy. As we stated most recently in *Bush, supra,* 888 F.2d at 1149: "Nothing other courts have written after *Keane* persuades us that when resolution comes, it should be on terms other than those *Keane* proposes. None of the other circuits has taken issue with our reading of the history of the writ ... or with the systemic interests in finality.... Until shown by more cogent argument the error of our ways, we shall adhere to *Keane.*"

## II. ANALYSIS

■■ The district court never reached the merits of Kerner's coram nobis petition,

holding that *Keane* required rejection of Kerner's petition because: 1) Kerner no longer suffers any lingering civil disabilities; 2) reputational and financial injuries are an insufficient basis for granting the writ. While we endorse those conclusions and the judgment of the district court for the reasons stated in *Keane,* we hold that relief is unavailable to Kerner's estate for an even more fundamental reason—Kerner's estate lacks standing to maintain an action for a writ of error coram nobis.

The doctrine of standing, as developed by the Supreme Court, sets forth minimum constitutional requirements under Article III that serve to limit the jurisdiction of federal courts to the adjudication of actual cases or controversies. The Supreme Court also has developed prudential limitations on federal jurisdiction; "a litigant seeking relief in federal court must satisfy *both* constitutional and prudential limitations in order to have standing to sue." *Locals 666 and 780 v. United States Dept. of Labor,* 760 F.2d 141, 143 (7th Cir.1985), cert. denied, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985) (summarizing the Supreme Court's explanation of Article III and prudential standing requirements in *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 474–75, 102 S.Ct. 752, 758, 759–60, 70 L.Ed.2d 700 (1982)).

■ Article III requires litigants to show: 1) personal injury as a result of the putatively illegal conduct of the defendant; 2) that the injury fairly can be traced to the challenged action; and 3) that the injury is likely to be redressed by a favorable action. *Valley Forge, supra,* 454 U.S. at 472, 102 S.Ct. at 758.

There is no doubt that the estate of Otto Kerner, Jr. has suffered actual damages as a result of the supposedly tainted convictions. The estate alleges $90,562.87 as the amount of its injury. That is the total of fines, penalties, back taxes and pension forfeiture it claims to have lost as a result of

---

1. *United States v. Keane, cert. denied,* —— U.S. ——, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989).

the invalid convictions.[2] This court recognized in *Keane* that financial injury gives the petitioner "a stake sufficient to produce a 'case or controversy'" under Article III. 852 F.2d at 204. Because (according to the estate's theory) all of the estate's financial injuries are traceable to the invalid convictions, the second prong of Article III standing is met. As to the third prong, "[w]e do not doubt that the return of a fine is permissible relief if a writ in the nature of coram nobis is otherwise justified...." *Keane*, 852 F.2d at 204 (citations omitted). So a favorable decision would likely redress the financial injuries suffered by Kerner's estate.

With Article III requirements satisfied, we turn to the prudential considerations limiting our jurisdiction.[3] Here the executor of Otto Kerner's estate does not fare so well. Of the three prudential concerns recognized by the Supreme Court in *Valley Forge*, only two are relevant and only the first is necessary to dispose of this case.

The prudential inquiry that proves to be the downfall of Kerner's estate is "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Process-*

ing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *Locals 666 and 780*, 760 F.2d at 144. To answer that question, and to determine what "zone of interests" was meant to be protected by the writ, we must inquire into the history and purposes of the writ of error coram nobis.

In *Keane* and *Bush*, we reached our conclusions about the writ's applicability only after a thorough examination of the historical justification for coram nobis. We found that the writ was "reserved for compelling events," *Keane*, 852 F.2d at 202, and was limited to "errors 'of the most fundamental character'...." *Bush*, 888 F.2d at 1147, quoting *United States v. Morgan*, 346 U.S. 502, at 512, 74 S.Ct. 247, at 253, 98 L.Ed. 248, and *United States v. Mayer*, 235 U.S. 55, at 69, 35 S.Ct. 16, at 19, 59 L.Ed. 129. To support a coram nobis claim, the petitioner must show first that an intervening change in law has "[sapped] the proceeding of any validity." *Keane*, 852 F.2d at 203. But he must also "demonstrate that the judgment of conviction produces lingering civil disabilities (collateral consequences)" and "that the error is the type of defect that would have justified relief during the terms of imprisonment." *Id.* We concluded that fines and reputational injuries were not the type of "civil disabilities" the writ

---

**2.** Not all of Kerner's convictions were necessarily tainted by the invalid mail fraud and conspiracy convictions. Thus the estate's actual injury is probably less than the figure it puts forth here. Because we hold that Kerner's estate lacks standing to seek a writ of error coram nobis, we need not determine the exact amount of financial injury resulting from the tainted convictions. It is sufficient for Article III purposes to conclude that the estate did suffer some actual financial injury. Furthermore, in determining the threshold standing issue on the basis of the pleadings, we "'accept as true all material allegations of the complaint, and ... construe the complaint in favor of the complaining party.'" *Pennell v. City of San Jose*, 485 U.S. 1, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988), quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

**3.** The Supreme Court set forth these prudential limitations on standing, "imposed by the courts themselves," *Locals 666 and 780, supra,* 760 F.2d at 143, in the *Valley Forge* opinion:

> Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the ques-

tion of standing. Thus, this Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. [490], at 499 [90 S.Ct. at 2205]. In addition, even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating "abstract questions of wide public significance" which amount to "generalized grievances," pervasively shared and most appropriately addressed in the representative branches. *Id.,* at 499–500 [95 S.Ct. at 2205–2206]. Finally, the Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153 [90 S.Ct. 827, 25 L.Ed.2d 184] (1970).

*Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. at 760 (footnote omitted).

of error coram nobis was intended to rectify.

Under this court's understanding of the history and purposes of the writ of error coram nobis, the estate of Otto Kerner must lack standing to proceed. The narrow "zone of interests" protected by the writ includes only the petitioner's right to be free of any lingering civil disabilities remaining from his arguably wrongful conviction. That interest is personal to Otto Kerner, Jr., and cannot survive his death. His estate is outside the "zone of interests" sought to be protected by the writ and therefore lacks standing.

Kerner's estate may run afoul of another prudential consideration. The Supreme Court has established that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (citations omitted)." The estate claims a legal right to the approximately $90,000 Kerner would have coming if the writ were granted, and believes that assertion is sufficient to withstand this prudential barrier. We disagree. The estate seems to be confusing rights with remedies; the right it seeks to assert here is the right to a writ of error coram nobis. That right, assuming there is merit to the petition, belongs only to the late Otto Kerner, Jr. Only if the estate has a right to ask for the writ can it then receive the remedy of $90,562.87.

Kerner's estate relies primarily on two cases to support its contention that the estate has standing. The first, *Blanton v. United States*, (Nos. 3–86–0593, 3–87–0667, 3–88–0004, M.D.Tenn. Jan. 27, 1988) (memorandum opinion), is easily distinguished. In *Blanton*, the writ was granted and fines were repaid to two petitioners and the widow of a third petitioner who died after the action commenced. We held in *Keane*, however, that the repayment of tainted fines was not sufficient to justify granting the writ. "[T]he fine ... is a sunk cost rather than a continuing disability producing additional injury as time passes....

Keane is not burdened by continuing disabilities that could justify the investment of judicial time necessary to decide whether he is entitled to vindication." 852 F.2d at 204. The *Blanton* court, having a more expansive view of the availability of coram nobis, necessarily has a more expansive view of the "zone of interests" protected by the writ. The *Blanton* court held that the petitioner had a right to repayment of fines; it followed that the widow had a property interest in that money and was therefore within the writ's "zone of interests." We readily acknowledge that other courts have reached different conclusions about the availability of coram nobis; we remain convinced that our view is correct. *Bush*, 888 F.2d at 1148–49. Our view of what constitutes a "lingering civil disability" is more narrow, and relates to personal rights and interests of the petitioner that cannot survive his death. Furthermore, the government in *Blanton* never contested the standing of any of the petitioners, so this issue was not before the court.

Kerner's other case, *Strode v. The Stafford Justices*, 23 F.Cas. 236 (C.C.D.Va. 1810), is irrelevant because it is a civil case. The use of coram nobis in civil cases was expressly abolished by Rule 60(b), Fed.R. Civ.P. *United States v. Dellinger*, 657 F.2d 140, 144 n. 7 (7th Cir.1981). Our standing discussion is based on the personal nature of a petitioner's interest in avoiding the "lingering civil disabilities" of criminal convictions. That concern cannot exist in civil matters.

### III. CONCLUSION

We hold that an estate lacks standing to bring a petition for writ of error coram nobis because it is outside the "zone of interests" protected by the writ. The judgment of the district court denying the estate's petition for a writ of error coram nobis is affirmed.

AFFIRMED.