**ESTATE OF Gentry E. McKINNEY, By and Through its Personal Representative, Virginia McKINNEY; Virginia McKinney, personally, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 94–30415.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1995.

Decided Dec. 8, 1995.

780

Norman Sepenuk, Portland, Oregon, for plaintiffs-appellants.

James L. Sutherland, Assistant United States Attorney, Eugene, Oregon, for defendant-appellee.

Before: SCHROEDER, REINHARDT, and FERNANDEZ, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge:

A decedent's estate and widow petitioned the district court for a writ of error coram nobis. They sought an order vacating the decedent's convictions, contending that they were obtained without proof as to an essential element. The district court denied the petition, concluding that the petitioners lacked standing because the right to coram nobis relief belongs only to the wrongfully convicted individual, and that even if they were found to have standing, they failed to meet the requirements for such relief. We affirm on the ground of lack of jurisdiction.

## I

On September 21, 1989, the decedent, Gentry McKinney, was convicted of one count of conspiracy to obstruct the Internal Revenue Service in the collection of currency transaction data and to evade the reporting requirements of 31 U.S.C. § 5313(a), and sixty-one counts of structuring currency transactions to avoid those reporting requirements in violation of 31 U.S.C. §§ 5322 and 5324(3).[1] McKinney's convictions were based on transactions in which he deposited, in amounts under $10,000, approximately $1.5 million in five different banks and fifteen different accounts over a span of fifteen weeks in order to avoid the filing of currency reports. At trial, the facts were largely undisputed, but a dispute did arise over the proper jury instruction on willfulness.[2] On December 16,

---

1. Under § 5313(a) and the regulations promulgated thereunder, 31 C.F.R. § 103.22(a)(1), financial institutions must file a report of each currency transaction involving more than $10,000. Section 5324 provides that "[n]o person shall for the purpose of evading the reporting requirements of section 5313(a) ... (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions," and § 5322 establishes penalties for willful violations of the antistructuring law.

2. The district court instructed the jury that the government need not prove that McKinney actually knew that structuring was unlawful. If the jury found that "structuring occurred," and that it was "knowingly and wilfully engaged in by

1989, McKinney was sentenced to a five-year term of imprisonment and fined $2.6 million. The fine was later reduced to $500,000.

McKinney appealed his conviction, challenging the instruction on willfulness, and this court affirmed in an unpublished disposition. McKinney filed a motion for a new trial, alleging jury misconduct. The district court denied the motion, and this court again affirmed, this time in a published opinion. *United States v. McKinney*, 952 F.2d 333 (9th Cir.1991). McKinney also filed a motion for postconviction relief under 28 U.S.C. § 2255, but the trial court denied the motion and no appeal was taken. McKinney died on July 2, 1993, while serving his sentence.

The appellants, McKinney's estate and widow, seek to have McKinney's convictions vacated by writ of error coram nobis on the basis of the Supreme Court's decision in *Ratzlaf v. United States*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), decided six months after McKinney's death. In *Ratzlaf,* the Court held that in order to establish a willful violation of the antistructuring law, the government must prove that the defendant acted with knowledge that his conduct was unlawful, *id.* at ——, 114 S.Ct. at 657, 663—that is, the defendant must have known "not only of the bank's duty to report cash transactions in excess of $10,000, but also of his duty not to avoid triggering such a report," *id.* at ——, 114 S.Ct. at 662. The appellants contend that because the jury instruction in McKinney's case did not require knowledge that structuring was unlawful, the government was relieved of the burden of proving every element of the offense.

The appellants conclude that such an error is fundamental and warrants coram nobis relief;[3] they seek the return of the $500,000 fine collected from McKinney. Contending that the Internal Revenue Service will use proof of McKinney's conviction against them in civil tax proceedings, the appellants also seek to bar it from doing so.

Relying primarily on Seventh Circuit precedent, the district court held that neither McKinney's estate nor his widow could seek coram nobis relief because "the writ belongs only to the wrongfully convicted individual and dies with that individual." Nevertheless, because of the absence of authority from this circuit, the district court addressed the coram nobis requirements and found that the appellants failed to establish the necessary elements.

## II

 The writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody. *Telink, Inc. v. United States,* 24 F.3d 42, 45 (9th Cir.1994). Specifically, "[t]he writ provides a remedy for those suffering from the 'lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and 'egregious legal errors.'" *United States v. Walgren,* 885 F.2d 1417, 1420 (9th Cir.1989) (quoting *Yasui v. United States,* 772 F.2d 1496, 1498, 1499 & n. 2 (9th Cir.1985)). Where the errors are of "the most fundamental character," such that the proceeding itself is rendered "invalid," the writ of coram nobis permits a court to vacate its judgments. *Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir.1987) (quoting *United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914)). District courts have authority to issue the writ under the All Writs Act, 28 U.S.C. 1651(a), and we review a denial of the writ *de novo* as if it were a dismissal of a claim under 28 U.S.C. § 2255. *Walgren,* 885 F.2d at 1420.

 We have held that to qualify for coram nobis relief, four requirements must be satisfied. Those requirements are: "'(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from

[McKinney] for the specific purpose of evading a reporting requirement that was known by [McKinney] to exist, that is sufficient," the court stated.

**3.** McKinney's codefendant, Samuel Waller, filed a motion pursuant to 28 U.S.C. § 2255, alleging

that his criminal convictions should be reversed in light of *Ratzlaf.* Petitioners contend, and the government does not dispute, that the motion was not opposed. On May 17, 1994, the district court entered an order vacating the conviction and later ordered the return of monetary fines.

the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.'" *United States v. McClelland,* 941 F.2d 999, 1002 (9th Cir.1991) (quoting *Hirabayashi,* 828 F.2d at 604).

We have not previously addressed the question whether the writ may be sought by a decedent's estate or widow. The Seventh Circuit, the only Court of Appeals to address the issue, has held that the writ is unavailable to a decedent's estate. *United States v. Craig,* 907 F.2d 653 (7th Cir.1990), *cert. denied,* 500 U.S. 917, 111 S.Ct. 2013, 114 L.Ed.2d 100 (1991); *United States v. Kerner,* 895 F.2d 1159 (7th Cir.1990). In *Kerner,* the court concluded that although the estate established Article III standing, it could not meet the prudential requirements because the interest it asserted was "personal" to the decedent and could not "survive his death." 895 F.2d at 1163. "Under this court's understanding of the history and purposes of the writ of error coram nobis," the court stated, "the estate ... lack[s] standing to proceed. The narrow 'zone of interests' protected by the writ includes only the petitioner's right to be free of any lingering civil disabilities remaining from his arguably wrongful conviction." *Id.* We generally agree.

■■■ Standing has both constitutional and prudential limitations.[4] Although the appellants may be capable of establishing

Article III standing, they nonetheless run afoul of the prudential limitations. We therefore limit our discussion to those limitations, specifically the requirement that the plaintiff "allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question." *Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d 56, 61 (9th Cir.1994) (citation and internal quotations omitted).

■■■ The appellants argue that they may petition for coram nobis because they can establish collateral consequences from the decedent's conviction. Their argument misapprehends the interests served by coram nobis and the necessary predicate for relief. The extraordinary remedy of coram nobis is intended to afford an individual a remedy for his unlawful conviction.[5] Historically, courts have required that a wrongfully convicted individual who is otherwise eligible for coram nobis relief demonstrate collateral consequences from that conviction to establish that the claim is not moot.[6] Those consequences, however, only demonstrate that the individual continues to be harmed by the conviction; they are not a basis for relief independent of the unlawful conviction. Those consequences that have been recognized to date, moreover, flow only to the unlawfully convicted individual.[7]

---

4. The Article III limitations include "(1) a threatened or actual distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the injury and the defendant's challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury." *Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d 56, 61 (9th Cir.1994) (citation and internal quotations omitted).

The prudential limitations require that the plaintiff "(1) assert his own rights, rather than rely on the rights or interests of third parties; (2) allege an injury that is more than a generalized grievance; and (3) allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question." *Hong Kong Supermarket v. Kizer,* 830 F.2d 1078, 1081 (9th Cir.1987). "Failure to satisfy any of these constitutional or prudential requirements defeats standing." *Id.*

5. As noted in *Telink,* 24 F.3d at 45, the writ fills in a very precise gap. It affords the criminal defendant the right to vacate a conviction where relief is no longer available under the federal

habeas corpus statute because the defendant is no longer in custody. *Id.*

6. We have repeatedly affirmed the presumption that collateral consequences flow from any conviction, *Hirabayashi,* 828 F.2d at 605–06, and have found the presumption to be irrebuttable in this day of federal sentencing guidelines based on prior criminal histories, federal "career criminal" statutes, and state repeat-offender provisions, *Chacon v. Wood,* 36 F.3d 1459, 1463 (9th Cir.1994).

7. For example, in *Hirabayashi,* 828 F.2d at 606–07, we concluded that even a misdemeanor conviction could carry collateral consequences to the petitioner because "[a]ny judgment of misconduct has consequences for which one may be legally or professionally accountable" and "[a] United States citizen who is convicted of a crime on account of race is lastingly aggrieved." Therefore, we issued the writ of coram nobis. While we agree with the Seventh Circuit's view of the standing question presented here, the rule

Thus, although we have never explicitly so held, we find the interests protected by coram nobis to be those of the individual who seeks to vacate an unlawful conviction and avoid the possible consequences thereof, and not those of any other person or entity. Were we to conclude otherwise, it would be extremely difficult to establish what limitations exist on the rights of heirs, relatives, or descendants to seek to set aside their forebear's or loved one's conviction and recover a fine paid at a time when the law in a particular area had not yet been fully developed. The appellants in this case do not, and cannot, allege that they have suffered an unlawful conviction; consequently, they have not suffered the essential harm coram nobis seeks to address. We therefore hold that they fail to allege an interest within the zone protected by coram nobis.

We note that in an unpublished memorandum opinion, *Blanton v. United States,* Nos. 3–86–0593, 3–87–0667, and 3–88–0004, 1988 WL 182378 (M.D.Tenn. Jan. 27, 1988), cited in *Kerner,* 895 F.2d at 1163, a decedent's widow was permitted to assert a decedent's right to a refund of a fine. In that case, however, the decedent died *after* he had filed the petition for coram nobis, and the court concluded that the decedent's widow could be substituted as a party. We need not address the question whether a decedent's widow or estate may pursue a writ filed by the decedent before his death or defend against an appeal from a trial court decision ordering that a writ be granted. We hold only that neither may assert the decedent's right to coram nobis in a petition filed after his death. Finally, we should note that this rule, like most others, may be subject to exceptions in extraordinary circumstances.

## CONCLUSION

We conclude that neither the decedent's estate nor his widow has standing to petition for coram nobis relief. The district court therefore properly denied their petition. The judgment of the district court is

AFFIRMED.

---

regarding collateral consequences in the Ninth Circuit (as well as in the Fourth, *see United States v. Mandel,* 862 F.2d 1067 (4th Cir.1988), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989)) differs from that of the Seventh. *See Craig,* 907 F.2d at 658; *Kerner,* 895 F.2d at 1163.