# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

KWOK CHEE KWAN, aka Jeff Kwan,
           *Defendant-Appellant.*

No. 03-50315

D.C. No.
CR-96-00433-SVW

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
December 6, 2004—Pasadena, California

Filed May 12, 2005
Amended July 21, 2005

Before: Betty B. Fletcher, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Betty Binns Fletcher

**COUNSEL**

David Ross, Ross, Rose & Hammill, LLP, Beverly Hills, California, for the defendant-appellant.

John Owens, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

**ORDER**

The Government's request in its petition for panel rehearing to correct a factual error is granted to the following extent to clarify the opinion, *United States of America v. Kwok Chee Kwan, aka Jeff Kwan*, slip. op. 5147 filed May 12, 2005.

The first two sentences of the paragraph that begins at the bottom of slip op. 5152 and continues on page 5153 are deleted and the following is inserted in its place:

> Defense counsel did not inform Kwan that, as a result of this change in the definition of an aggravated felony, he had pled guilty to an offense that would almost certainly cause him to be deported. Nor did counsel inform Kwan, or the court, that Kwan potentially could avoid deportation, either by

renegotiating his plea agreement or by receiving a sentence of less than one year. On December 2, 1996, the court applied one downward adjustment (for acceptance of responsibility), which reduced the sentencing range from 18-24 months to 12-18 months. The court then sentenced Kwan to a prison term of one year and one day. The court also ordered him to pay restitution of $10,000.

The sentence on slip op. 5153 that begins, "On May 1, 1997, the Immigration and Naturalization Service ("INS") issued Kwan a Notice to Appear . . .," then starts a new paragraph.

The petition for rehearing is otherwise denied.

Future petitions for rehearing and petitions for rehearing en banc shall not be entertained.

---

**OPINION**

B. FLETCHER, Circuit Judge:

Kwok Chee Kwan appeals the district court's dismissal of his petition for writ of error coram nobis. Kwan's petition collaterally attacks his conviction by guilty plea and his sentence on the ground of ineffective assistance of counsel. Because we find that Kwan's counsel was constitutionally ineffective in affirmatively misleading him as to the immigration consequences of his conviction, and that Kwan has satisfied all of the requirements for coram nobis relief, we reverse.

I.

Kwan entered the United States in March of 1989. Subsequently, he became a lawful permanent resident. His wife and

three children, ages 12, 15, and 18, are United States citizens. In February of 1996, Kwan was indicted for two counts of bank fraud. When considering whether to plead guilty, Kwan asked his defense counsel whether doing so would cause him to be deported. Defense counsel assured Kwan that although there was technically a possibility of deportation, "it was not a serious possibility." Counsel further assured Kwan that this advice was based "on his knowledge and experience." Counsel also explained to Kwan that, at his plea colloquy, the judge would tell him that he might suffer immigration consequences, but reassured him that there was no serious possibility that his conviction would cause him to be deported.

On July 9, 1996, Kwan pled guilty to two counts of bank fraud in violation of 18 U.S.C. § 1344(1). Under the Sentencing Guidelines, the sentencing range for Kwan's conviction was 18-24 months imprisonment; however, Kwan was potentially eligible for various downward adjustments that, if granted, could reduce his sentence to less than one year.

Legal permanent residents who are convicted of an aggravated felony are subject to deportation. 8 U.S.C. § 1227(a)(2)(iii). On September 30, 1996, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") was enacted; *inter alia*, IIRIRA amended the definition of an aggravated felony under the Immigration and Nationality Act ("INA") by reducing the prison-sentence requirement for a qualifying theft offense from "at least five years" to "at least one year." *See* Pub. L. No. 104-208, 1996 HR 3610 (amending 8 U.S.C. § 1101(a)(43)(G)). IIRIRA expressly provided that changes in the definition of an aggravated felony would apply retroactively, regardless of the date of conviction. 8 U.S.C. § 1101(a)(43) ("Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996.").

Defense counsel did not inform Kwan that, as a result of this change in the definition of an aggravated felony, he had

pled guilty to an offense that would almost certainly cause him to be deported. Nor did counsel inform Kwan that he potentially could avoid deportation, either by renegotiating his plea agreement or by receiving a sentence of less than one year. On December 2, 1996, the court applied one downward adjustment (for acceptance of responsibility), which reduced the sentencing range from 18-24 months to 12-18 months. The court then sentenced Kwan to a prison term of one year and one day. The court also ordered him to pay restitution of $10,000.

On May 1, 1997, the Immigration and Naturalization Service ("INS") issued Kwan a Notice to Appear, which stated that he was subject to deportation because he had been convicted of an aggravated felony. Kwan retained immigration counsel and challenged his deportation, and on December 10, 1997, the Immigration Judge ("IJ") ruled that Kwan's offense was not an aggravated felony as defined under either 8 U.S.C. § 1101(a)(43)(M)(i) or 8 U.S.C. § 1101(a)(43)(R). Kwan completed his prison term and was released from INS custody. After rejoining his family, he completed his period of supervised release and paid the entire $10,000 restitution ordered by the sentencing court.

However, on May 26, 2000, the INS issued Kwan a second Notice to Appear, which again informed Kwan that he was subject to deportation because his 1996 conviction was an aggravated felony. On February 26, 2001, the second IJ to consider Kwan's status found that he had been convicted of a theft offense for which a term of imprisonment of at least one year was imposed, an aggravated felony as defined under 8 U.S.C. § 1101(a)(43)(G). After Kwan's Motion to Revisit was denied, he filed the petition for writ of coram nobis that is the subject of this appeal.

## II.

[1] Before addressing the merits of this appeal, we must address the government's motion to dismiss for lack of juris-

diction, which argues that we lack jurisdiction over this appeal because Kwan failed to first obtain a Certificate of Appealability ("COA"). Whether the COA requirement of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), as specified in 28 U.S.C. § 2253(c)(1), applies to coram nobis proceedings is a question of first impression for this court. We find that the COA requirement does not apply to coram nobis proceedings, hold that we have jurisdiction to review the district court's denial of Kwan's coram nobis petition without a COA, and deny the motion to dismiss.

**[2]** In reaching our conclusion, we keep in mind the particular nature of coram nobis relief: whereas petitions for habeas corpus relief and motions for relief under 28 U.S.C. § 2255 may only be filed by persons who are in government custody, "[t]he writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *Estate of McKinney By and Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995). "Specifically, the writ [of coram nobis] provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *Id.* (quotation marks and citation omitted).

**[3]** Section 2253(c)(1) makes the grant of a COA necessary in only two kinds of appeals: an appeal from "(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or (B) the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1); *see also Forde v. United States Parole Comm'n*, 114 F.3d 878, 879 (9th Cir. 1997) (concluding that the plain language of 28 U.S.C. § 2253(c)(1) does not require a COA in an appeal from an order denying a § 2241 petition where the detention complained of does not arise out of a process issued by a state court). Thus, the plain language of 28 U.S.C. § 2253(c)(1) indicates that a COA is not required to

obtain appellate review of the denial of a coram nobis petition.

**[4]** The Third Circuit is the only circuit that has ruled on the question of whether a COA is required before an appeal of a petition for a writ of error coram nobis may be taken, and it held that there is no COA requirement for coram nobis appeals.[1] *See United States v. Baptiste*, 223 F.3d 188, 189 n.1 (3d Cir. 2000) ("Neither the statute making the writ of error coram nobis available in federal courts in criminal matters, see 28 U.S.C. § 1651(a), nor any Federal Rule of Appellate Procedure requires a certificate of appealability before an appeal may be taken, nor does such a requirement appear in the case law.").

In arguing that this court should find that coram nobis appeals are subject to the COA requirement, despite the plain language of 28 U.S.C. § 2253(c)(1) and the Third Circuit's holding in *Baptiste*, the government points only to cases that are inapposite here. First, the government cites two cases in which we have applied AEDPA's COA requirement to motions collaterally attacking convictions but not brought under 28 U.S.C. § 2255: *Porter v. Adams*, 244 F.3d 1006 (9th Cir. 2001) and *Ortiz v. Stewart*, 195 F.3d 520 (9th Cir. 1999). What the government fails to recognize is that in both *Porter* and *Ortiz*, we held that the petitioners' motions were subject to the COA requirement only because we found that the motions had to be construed as successive habeas petitions: in both cases, the petitioners were attempting to raise claims via forms of collateral attack that are not subject to the COA requirement solely because they had already unsuccessfully attempted to obtain relief via forms of collateral attack that are subject to the COA requirement. *See Porter*, 244 F.3d at 1007 (applying the COA requirement to a § 2241 motion and distinguishing *Forde* after concluding that the motion should

---

[1]The Second Circuit declined to decide this issue in *United States v. Mandanici*, 205 F.3d 519, 524 n.9 (2d Cir. 2000).

be construed as a successive § 2255 motion to which § 2253(c)(1) applied); *Ortiz*, 195 F.3d at 520-21 (applying the COA requirement to a Rule 60(b) motion after concluding that the motion should be construed as a successive habeas petition to which § 2253(c)(1) applied). Unlike the motions at issue in *Porter* and *Ortiz*, Kwan's coram nobis petition cannot be construed as a successive petition for collateral relief.

**[5]** The government also relies upon cases where we have prevented the use of coram nobis petitions to circumvent AEDPA's gatekeeping provisions by persons who would be eligible to petition for the forms of collateral relief governed by AEDPA *but for* those gatekeeping provisions. For example, the government cites *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002), in which a prisoner argued that he was eligible for coram nobis relief, despite the fact that he remained in government custody, because he could show that "a more usual remedy" was unavailable to him. *Id.* at 761. However, the more usual remedy of a § 2255 petition was not available to him only because he was time-barred from bringing a § 2255 petition. *Id.* Because Matus-Leva was eligible for § 2255 relief *but for* the AEDPA time-bar, we held that he was ineligible for coram nobis relief. *Id.* ("Matus-Leva cannot overcome the first hurdle [for coram nobis eligibility] because he is still subject to supervised release, and thus he is in 'custody.' A person in custody may seek relief pursuant to 28 U.S.C. § 2255. Because the more usual remedy of a habeas petition is available, the writ of error *coram nobis* is not." (citations omitted)). Unlike Matus-Leva, Kwan has served his full sentence and is no longer in custody. As a result, he is no longer eligible for any form of relief governed by AEDPA, and he is not using the writ of coram nobis simply as a means to bypass AEDPA's gatekeeping requirements.

Arguing that it would be "at odds with AEDPA" to permit a person who petitions for coram nobis relief after serving his or her full sentence to avoid AEDPA's gatekeeping requirements, the government ignores the obvious reason why those

gatekeeping requirements are not necessary in legitimate coram nobis cases — namely, few defendants who have already completely served their sentences continue to have reasons to challenge their conviction or sentence.

**[6]** For the foregoing reasons, we hold that AEDPA's COA requirement does not apply to coram nobis proceedings. We further conclude that there is no compelling reason to construe Kwan's coram nobis petition as one that is subject to the COA requirement.

**[7]** Federal courts have authority to issue the writ of coram nobis under the All Writs Act, 28 U.S.C. § 1651(a). Kwan filed his petition for writ of error coram nobis on June 19, 2002. The district court granted the government's motion to dismiss the petition on May 28, 2003. Petitioner filed his notice of appeal on June 26, 2003. Pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, the appeal is timely.[2] We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## III.

**[8]** We review a denial of the writ of error coram nobis de novo. *McKinney*, 71 F.3d at 781; *United States v. Walgren*, 885 F.2d 1417, 1420 (9th Cir. 1989).

> [T]o qualify for coram nobis relief, four requirements must be satisfied. Those requirements are: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3)

---

[2]Rule 4 of the Federal Rules of Appellate Procedure was amended in 2002 to clarify whether an appeal from an order granting or denying a petition for writ of error coram nobis is governed by criminal or civil time limitations. As amended, Rule 4 expressly provides that such appeals are governed by the civil time limitations, superseding our holding in *Yasui v. United States*, 772 F.2d 1496 (9th Cir. 1985). *See* Fed. R. App. P., Advisory Committee Notes to Rule 4, 2002 Amendments.

adverse consequences exist from the conviction suf-
ficient to satisfy the case or controversy requirement
of Article III; and (4) the error is of the most funda-
mental character.

*McKinney*, 71 F.3d at 781-82 (quotation marks and citations
omitted). We find that Kwan satisfied all four requirements
for coram nobis relief. We address each requirement in turn.

### A.

**[9]** Kwan satisfied the first requirement, that "a more usual
remedy is not available" to him, by establishing that he is not
in custody and, as a result, not eligible for habeas relief or
§ 2255 relief. *See United States v. Mett*, 65 F.3d 1531, 1533-
34 (9th Cir. 1995). The government argues that Kwan did not
satisfy this first requirement because Kwan *could have* filed
a § 2255 motion while he was still in custody but failed to do
so. In other words, the government argues that Kwan cannot
be eligible for coram nobis relief, even though § 2255 relief
is clearly not available to him now, because a "more usual
remedy *was* available to him" then.

Other courts have not interpreted this threshold requirement
as the government would have us do. *See, e.g.*, *United States
v. Morgan*, 346 U.S. 502, 512 (1954) (finding petitioner met
threshold requirement for coram nobis relief even though peti-
tioner could have raised denial of counsel claim by filing
§ 2255 motion while incarcerated); *United States v. Esogbue*,
357 F.3d 532, 534 (5th Cir. 2004) (same).

Moreover, the government's argument asks us to adopt a
subtle change in the language of the threshold requirement
(from "is unavailable" to "was unavailable") that would cause
a great change in its meaning (from "unavailable now" to "un-
available *ever*"). If the mere fact that a coram nobis petitioner
*could have* raised his claim while in custody was sufficient to
bar coram nobis eligibility, then there would be no need for

the second coram nobis requirement, which requires the petitioner to establish that "valid reasons exist for not attacking the conviction earlier." Taken together, the first and second requirements make clear that a petitioner is not barred from seeking coram nobis relief simply because he could have sought relief while in custody. Instead, he is given the opportunity to explain why he did not seek relief while in custody, and he is only barred from coram nobis eligibility if he fails to show that he had valid reasons for delaying.[3]

## B.

"Because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations." *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994); *see also Morgan*, 346 U.S. at 507 (explaining that coram nobis petitions are allowed "without limitation of time"). In lieu of a specific statute of limitations, courts have required coram nobis petitioners to provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier. *See, e.g.*, *Morgan*, 346 U.S. at 512; *McKinney*, 71 F.3d at 781; *Maghe v. United States*, 710 F.2d 503, 503-04 (9th Cir. 1983). Similarly, in *Telink*, we explained that a coram nobis petition "is subject to the equitable doctrine of laches . . . [which] bars a claim if unreasonable delay causes prejudice to the defen-

---

[3]The Fifth Circuit adopted similar reasoning in *Esogbue*. In that case, the petitioner had filed his petition in the court of his conviction, faced the collateral consequence of possible deportation, and was no longer serving his sentence for his federal conviction, but the government argued that Esogbue's coram nobis petition should be dismissed because Esogbue could have sought permission to file a successive § 2255 motion instead. 357 F.3d at 533-34. The Fifth Circuit explained that "this argument is flawed, because Esogbue was no longer in custody when he sought *coram nobis* relief; therefore, the alternative legal remedy of a successive § 2255 motion was not available to him at that time." *Id.* at 534. The Fifth Circuit further noted that, on remand, Esogbue would still have to demonstrate sound reasons for failing to assert his claims while he was still in custody. *Id.* at 535.

dant." 24 F.3d at 45 (citations omitted); *see also Hirabayashi v. United States*, 828 F.2d 591, 605 (9th Cir. 1987) (rejecting argument that coram nobis petition should be denied on the ground of laches because petitioner's reasons for delaying were reasonable). If a respondent seeks dismissal of a coram nobis petition on the ground of laches, the respondent bears the burden of showing he was prejudiced by the petitioner's delay. *Telink*, 24 F.3d at 47.

While courts have not elaborated on what constitutes a "sound" reason, our review of coram nobis cases reveals that courts have denied relief on this ground where the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ. For example, in *Maghe*, the petitioner filed a coram nobis petition challenging a 25-year old conviction. 710 F.2d at 503. Maghe had pled guilty to transporting a stolen motor vehicle in 1956, and a collateral consequence of that conviction was an "undesirable discharge" from the Army. *Id.* Twenty-five years later, Maghe requested that the Army upgrade his discharge, and the Army denied the request. *Id.* In response, Maghe filed a coram nobis petition challenging the validity of the 1956 conviction. *Id.* Unlike Kwan, Maghe had been aware of the ground for attacking his conviction throughout the duration of the 25-year delay. Unlike Kwan, who sought the advice of counsel and pursued legal remedies to address the collateral consequences of his conviction during the period of delay, Maghe simply delayed for twenty-five years and offered no explanation for doing so. *Id.* at 504; *see also Klein v. United States*, 880 F.2d 250, 254 (10th Cir. 1989) (petitioner delayed seeking coram nobis relief for seven years without any explanation, delay caused prejudice to the government because key witnesses died, and petitioner was raising claims that had already been litigated); *United States v. Correa-De Jesus*, 708 F.2d 1283, 1286 (7th Cir. 1983) (petitioner waited sixteen years to re-litigate claim that he had raised and then dropped on direct appeal); *Martinez v. United States*, 90 F. Supp. 2d 1072, 1075-77 (D. Haw.

2000) (petitioner attacking prior conviction on a ground that he had already litigated and failed to challenge on direct appeal, failed to collaterally challenge while in custody for that conviction, and failed to collaterally challenge until six years after receiving enhanced sentence for a subsequent conviction).

**[10]** In the instant case, Kwan has provided a reasonable explanation for not challenging his conviction earlier, the government has failed to demonstrate prejudice, and Kwan is not abusing the writ — he is not attempting to re-litigate claims or circumvent procedural bars. Although the district court found that Kwan's reasons for delaying were not sound, we disagree. In reaching its conclusion, the district court reasoned that Kwan's delay was not justified because the Service first notified Kwan that it considered him removable on the basis of his conviction in May, 1997, and Kwan could have challenged his conviction by filing a § 2255 motion at that time. However, Kwan explained that he did not pursue habeas relief in 1997 because he retained immigration counsel, and that counsel advised him to challenge the INS's determination that Kwan's conviction was an aggravated felony under either 8 U.S.C. § 1101(a)(43)(M)(i) or 8 U.S.C. § 1101(a)(43)(R), as indicated in Kwan's first Notice to Appear. Given the fact that defense counsel had advised him that there was little chance his conviction would cause him to be deported, Kwan's decision to focus on challenging his deportation on the basis of that conviction was reasonable. Only after the INS re-initiated removal proceedings against Kwan and determined that his conviction was an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) did Kwan have reason to conclude that his criminal defense counsel had in fact erred and affirmatively misled him by advising him that there was "no serious possibility" that his conviction would cause him to be deported.

Although it may have been more prudent of Kwan to collaterally attack his conviction earlier, his course of action was reasonable. The law does not require Kwan to challenge his

conviction at the earliest opportunity, it only requires Kwan to have sound reasons for not doing so. *Cf. United States v. Tucor Int'l, Inc.*, 189 F.3d 834, 836-38 (9th Cir. 1999) (granting coram nobis relief even though the petitioner waited four years after pleading guilty to file coram nobis petition and petitioner could have, but did not, raise same claim at the time of conviction); *Hirabayashi*, 828 F.2d at 605 (rejecting argument that coram nobis petition, filed nearly forty years after conviction, should be dismissed on ground of laches where claim was based upon evidence that could have been, but was not, discovered years earlier); *Rewak v. United States*, 512 F.2d 1184, 1185 (9th Cir. 1975) (granting coram nobis petition for sentencing error ten years after petitioner was released from custody).

In sum, because there is no statute of limitations for coram nobis petitions, Kwan has provided sound reasons for not challenging his conviction earlier, Kwan is not attempting to abuse the writ of coram nobis, and the government has not even suggested that Kwan's delay caused it any prejudice, we decline to find Kwan ineligible for relief based solely on the fact that he could have, but did not, collaterally attack his conviction earlier.

## C.

**[11]** It is undisputed that the possibility of deportation is an "adverse consequence" of Kwan's conviction sufficient to satisfy Article III's case or controversy requirement. *See, e.g.*, *Park v. California*, 202 F.3d 1146, 1148 (9th Cir. 2000) ("Because he faces deportation, Park suffers actual consequences from his conviction."); *Esogbue*, 357 F.3d at 534 (finding collateral consequence of deportation sufficient to establish jurisdiction for coram nobis petition).

## D.

**[12]** Kwan may satisfy the fundamental error requirement by establishing that he received ineffective assistance of coun-

sel. *See Mett*, 65 F.3d at 1534 (explaining that "[a]n individual no longer in custody may employ the rarely-used writ of coram nobis to make a Sixth Amendment assistance of counsel attack on his conviction"); *Esogbue*, 357 F.3d at 534-35 ("[I]neffective assistance of counsel, if proven, can be grounds for *coram nobis* relief.") (citing *United States v. Castro*, 26 F.3d 557, 559-60 (5th Cir. 1994) (reversing denial of coram nobis petition and remanding for determination of whether counsel rendered ineffective assistance by failing to advise Castro of the availability of a judicial recommendation against deportation or to request same from the sentencing court)).

To prevail on his claim of ineffective assistance of counsel, Kwan must prove 1) that his counsel's performance fell below an objective standard of reasonableness, and 2) that the deficiency in his counsel's performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). The district court found Kwan's defense counsel's performance to be deficient, but not prejudicial. We "review de novo a claim of ineffective assistance of counsel, which is a mixed question of law and fact." *Harris By and Through Ramseyer v. Wood*, 64 F.3d 1432, 1435 (9th Cir. 1995).

### i. Deficient Performance

We have held that an attorney's failure to advise a client of the immigration consequences of a conviction, without more, does not constitute ineffective assistance of counsel under *Strickland. United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003). However, *Fry* is not dispositive here, where counsel did not merely refrain from advising Kwan regarding the immigration consequences of his conviction, but, instead, responded to Kwan's specific inquiries regarding the immigration consequences of pleading guilty and purported to have the requisite expertise to advise Kwan on such matters.

**[13]** While we have not yet determined what "more" would cause a defense counsel's advice, or lack thereof, regarding the immigration consequences of a conviction to fall below an objective standard of reasonableness, we note that the Second Circuit has held that an affirmative misrepresentation regarding immigration consequences is deficient under *Strickland. United States v. Couto*, 311 F.3d 179, 187-88 (2d Cir. 2002). In *Couto*, the Second Circuit noted that it had previously held "that an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of reasonableness," *id.* at 187 (citing *United States v. Santelises*, 509 F.2d 703, 704 (2d Cir. 1975)), but recognized that the circumstances of Couto's case were more egregious. In *Couto*, as here, counsel had not merely failed to advise his client regarding deportation consequences: in response to his client's inquiry, counsel assured Couto that while deportation was a possibility, "there were many things that could be done to prevent her from being deported." *Couto*, 311 F.3d at 183. Couto's counsel's advice was, however, incorrect. "[B]ecause the 1996 amendments to the Immigration and Nationality Act eliminated all discretion as to deportation of non-citizens convicted of aggravated felonies, her plea of guilty meant virtually automatic, unavoidable deportation." *Id.* at 183-84. As a result, the Second Circuit found that Couto's counsel had affirmatively misrepresented the deportation consequences of Couto's guilty plea and held that such an affirmative misrepresentation is objectively unreasonable, particularly in light of contemporary standards of attorney competence.[4] *Id.* at 188.[5]

---

[4]The Second Circuit also discussed evidence that "standards of attorney competence [may] have evolved to the point that a failure to inform a defendant of the deportation consequences of a plea would by itself now be objectively unreasonable" but did not reach the issue. *Couto*, 311 F.3d at 188.

[5]*See also Downs-Morgan v. United States*, 765 F.2d 1534, 1540-41 (11th Cir. 1985) (finding affirmative misrepresentation regarding immigration consequences, coupled with likelihood that petitioner would be imprisoned and executed after deportation, could be ineffective assistance).

**[14]** The circumstances of the instant case are analogous to those in *Couto*. We agree that where, as here, counsel has not merely failed to inform, but has effectively misled, his client about the immigration consequences of a conviction, counsel's performance is objectively unreasonable under contemporary standards for attorney competence. Here, Kwan *asked* counsel whether pleading guilty would cause him to be deportable, and counsel chose to advise him. Moreover, counsel represented himself as having expertise on the immigration consequences of criminal convictions. Subsequently, counsel either failed to keep abreast of relevant and significant changes in the law or failed to inform Kwan of those changes' effect on the deportation consequences of Kwan's conviction. In either case, counsel never advised Kwan of the options that remained open to him prior to sentencing, and counsel never informed the sentencing judge that a sentence only two days shorter than the sentence ultimately imposed would enable Kwan to avoid deportation and remain united with his family.

That counsel may have misled Kwan out of ignorance is no excuse. It is a basic rule of professional conduct that a lawyer must maintain competence by keeping abreast of changes in the law and its practice. *See, e.g.*, ABA Model Rules of Professional Conduct, Rule 1.1[6]. Although counsel was a criminal defense attorney and not an immigration attorney, counsel made an affirmative representation to Kwan that he had knowledge and experience regarding the immigration consequences of criminal convictions; as a result, counsel had a professional responsibility to inform himself and his client of significant changes in the law that drastically affected the immigration consequences of his client's plea. *See generally* ABA Model Rules of Professional Conduct, Rule 1.1. At the time that Kwan was prosecuted, Congress's efforts to revise immigration law were widely reported, as was the ultimate enactment of IIRIRA. If counsel did not have the requisite competence in immigration law, or if counsel did not plan on maintaining the requisite competence, he should not have

advised Kwan regarding the immigration consequences of his plea without referring Kwan to an immigration lawyer or consulting himself with an immigration lawyer in the first place. *See id.*

Counsel's performance also fell below the American Bar Association's ethical standard for criminal defense attorneys with respect to immigration consequences. The Supreme Court noted this standard in *INS v. St. Cyr*, 533 U.S. 289 (2001): "[T]he American Bar Association's Standards for Criminal Justice provide that, if a defendant will face deportation as a result of a conviction, defense counsel 'should fully advise the defendant of these consequences.' " *Id.* at 323 n.48 (quoting 3 ABA Standards for Criminal Justice 14-3.2 Comment, 75 (2d ed. 1982)). Although "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel," *Nix v. Whiteside*, 475 U.S. 157, 165 (1986), "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . . ." *Strickland*, 466 U.S. at 688.

Despite counsel's knowledge that the likelihood of deportation was a significant factor considered by Kwan when he was deciding whether to plead guilty, counsel never informed Kwan that IIRIRA rendered his previous assessment of the risk grossly inaccurate. As noted above, after IIRIRA, Kwan's conviction would create a near-certain risk of deportation, unless he received a prison term of less than one year. Although IIRIRA was enacted before Kwan's sentencing hearing was scheduled, counsel never advised Kwan that the option of moving to withdraw his plea was viable, so long as he moved prior to sentencing. *See* Fed. R. Crim. P. 32(e) (1996) ("If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason.").[6] Counsel never explored the option of

---

[6]Pursuant to the 2002 Amendments to the Federal Rules of Criminal Procedure, withdrawal of guilty pleas is now governed by Fed. R. Crim.

renegotiating the plea agreement with the prosecution so as to avoid the deportation consequences. Nor did counsel inform the sentencing judge that Kwan would almost certainly be deported if he was sentenced to a year or more in prison.

**[15]** Counsel's representations regarding the deportation consequences of Kwan's plea may not have been erroneous at the time he made them, but he failed to correct those representations when they became grossly misleading, and when counsel still had the opportunity, and responsibility, to do so. Counsel's performance breached not only standards particular to criminal defense attorneys but also basic standards for competence that are general to the profession. We therefore hold that counsel's performance was objectively unreasonable and meets the first prong of the *Strickland* test.

### ii. Prejudice

In the *Strickland* prejudice analysis, the determinative question is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Glover v. United States*, 531 U.S. 198, 202-03 (2001). To demonstrate this, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.

**[16]** Kwan alleges that, but for counsel's deficient performance, the outcome of his proceedings would have differed in one of two ways. Specifically, Kwan alleges that "had he known what constituted an 'aggravated felony,' he would have discussed with his lawyer the possibility of amending his plea agreement or asking the [sentencing] court for a downward departure." Although the sentencing judge would not

P. 11(e). The 2002 Amendments were intended to spell out or clarify existing law. *See* Fed. R. Crim. P., Advisory Committee Notes to Rule 11, 2002 Amendments.

have had the discretion to grant a downward departure solely on the basis of immigration consequences, *United States v. Alvarez-Cardenas*, 902 F.2d 734, 736-37 (9th Cir. 1990), Kwan was potentially eligible for downward departures on other grounds. Had counsel and the court been aware that a nominally shorter sentence would enable Kwan to avoid deportation, there is a reasonable probability that the court would have imposed a sentence of less than one year.

In addition, Kwan explains that, had he been made aware of the deportation consequences of his conviction, he would have explored the option of renegotiating his plea agreement. That Kwan asked counsel about the immigration consequences of pleading guilty before agreeing to do so demonstrates clearly "that he placed particular emphasis on [immigration consequences] in deciding whether or not to plead guilty." *Hill v. Lockhart*, 474 U.S. 52, 60 (1985). Kwan has also gone to great lengths to avoid deportation and separation from his wife and children, who are all United States citizens. Taken together, these facts establish that but for counsel's deficient performance, there is a reasonable probability that Kwan would have moved to withdraw his guilty plea. After withdrawing his plea, Kwan could have gone to trial or renegotiated his plea agreement to avoid deportation; he could have pled guilty to a lesser charge, or the parties could have stipulated that Kwan would be sentenced to less than one year in prison.

As noted above, a sentencing court may exercise its discretion to permit a defendant to withdraw his guilty plea prior to sentencing if the defendant shows a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 32(e) (1996). There is a reasonable probability that the sentencing court in this case would have considered the significant change in the immigration consequences of Kwan's plea to be a fair and just reason for withdrawing his plea. While the sentencing court's decision to grant or deny a motion to withdraw is discretionary, "to show prejudice [Kwan] need only show 'a probability

sufficient to undermine confidence in the outcome' " that he could have withdrawn his plea. *United States v. Leonti*, 326 F.3d 1111, 1122 (9th Cir. 2003) (holding that petitioner could establish prejudice by showing that counsel's deficient performance reduced likelihood that prosecution would make a substantial assistance motion, even though "the government has wide discretion in filing a substantial assistance motion, and the court has discretion in choosing to depart downward"). "A deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's favor can constitute ineffective assistance of counsel." *Castro*, 26 F.3d at 560 (holding that counsel's failure to request that sentencing judge exercise its discretion to make judicial recommendation against deportation was prejudicial under *Strickland*) (citing *United States v. Golden*, 854 F.2d 31, 32 (3d Cir. 1988)).

*****

**[17]** For the foregoing reasons, we conclude that Kwan has established his claim of ineffective assistance of counsel under *Strickland*, which is fundamental error. Because Kwan satisfied all four requirements for coram nobis relief, we reverse and remand to the district court with instructions to grant the writ, vacate Kwan's sentence, and impose a sentence of one day less than one year.

**REVERSED AND REMANDED.**