Chief Judge KOZINSKI,
dissenting:
In order to survive summary dismissal, a habeas petitioner must “allege specific facts which, if true, would entitle him to relief.” United States v. Howard, 381 F.3d 873, 877 (9th Cir.2004). The only “specific fact[ ]” Ramiro alleged before the district court, and on appeal, was that his attorney said he “may” be deported when, in fact, he would be deported. He claims his situation is analogous to that in United States v. Kwan, 407 F.3d 1005 (9th Cir.2005), but it’s nowhere close.
In Kwan, we found ineffective assistance where Kwan’s attorney assured him “that although there was technically a possibility of deportation, ‘it was not a serious possibility’ ” when, in fact, Kwan’s plea to an aggravated felony would “almost certainly” lead to deportation. Id. at 1008-09. The attorney also advised Kwan not to worry if the judge told him “that he might suffer immigration consequences” because it wasn’t a real threat. Id. at 1008. Ramiro’s lawyer said nothing of the sort.
Ramiro insists that his attorney was required to tell him “you will be deported,” but we’ve never before required an attorney to guarantee the course of future legal events out of his control and I see no reason to start now. As the district court observed, “[a]n alien convicted of an aggravated felony may be almost certain to be deported, but it would be foolish ... to say that deportation is always unavoidable and will occur.” That’s why, in Kwan, we said an aggravated felony plea created a “near-certain risk of deportation” such that Kwan would “almost certainly” be deported. Id. at 1009, 1016 (emphasis added).
Ignoring Ramiro’s arguments, the majority comes up with its own theory as to what bad advice Ramiro’s attorney may have dispensed: The attorney “apparently advised [Ramiro] that the immigration judge would ultimately decide whether to deport him, and that receiving a lower sentence might improve his chances of avoiding deportation.” Maj. op. 459. The majority claims this hypothetical advice is supported by the record. It’s not.
Here’s the entirety of the evidence regarding what Ramiro was told prior to pleading: Ramiro’s own declaration says only that the attorney “told me that if I pleaded guilty I may be deported. He did not tell me that the crime I was charged with was an aggravated felony and that if convicted I will surely be deported.” At Ramiro’s plea colloquy, the court told Ramiro: “Since you are not a citizen a conviction in this case may affect your right to remain in this country.” Ramiro was asked if he understood; he said that he did. Ramiro’s lawyer then said, “[F]or the record, I have advised my client that he more than likely will be deported upon completion of a sentence of incarceration.” This is nothing like Kwan, where the lawyer told his client that deportation “ ‘was not a serious possibility.’ ” 407 F.3d at 1008.
The majority takes statements made by Ramiro’s attorney at sentencing, after Ramiro had pled guilty and after the attorney told him “he more than likely will be deported” and turns them into “advice” the attorney gave Ramiro prior to entering his plea. It does so despite Ramiro’s failure to make any such claim. But any advice the attorney had for Ramiro after he plead guilty can have no bearing on Ramiro’s decision whether to plead. The majority makes its case by disregarding the timing of the lawyer’s statements.
*461 We “apply a ‘strong presumption’ that counsel’s representation was within the ‘wide range’ of reasonable professional assistance.” Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Such a presumption can’t be reconciled with the majority’s scouring of the post-plea record for hints as to what the attorney might have told his client prior to the plea agreement. We’re required to give the attorney’s conduct the benefit of the doubt and must construe ambiguities in favor of the lawyer. See Cullen v. Pinholster, — U.S. -, 131 S.Ct. 1388, 1407, 179 L.Ed.2d 557 (2011). The majority does neither.
But even if we were to consider what was said at sentencing, so what? The majority criticizes Ramiro’s attorney for “apparently advisfing] him that the immigration judge would ultimately decide whether to deport him.” Maj. op. 459. This isn’t an “affirmative misrepresentation,” Kwan, 407 F.3d at 1015, it’s a correct statement of the law: Ramiro couldn’t be deported without the decision of an IJ. See 8 U.S.C. § 1229a(c)(l)(A). Where’s the beef?
Nor is it fair to label Ramiro’s attorney ineffective for arguing “that receiving a lower sentence might improve [Ramiro’s] chances of avoiding deportation.” Maj. op. 459. The attorney said, “it’s our understanding that this is a deportable offense and that there is — as far as [ICE] is concerned, there’s zero tolerance as far as these matters are concerned.... I’m not sure if [a lower sentence] is going to really make any difference as far as how it affects the issue of deportation.” He repeatedly said he didn’t know if a lesser sentence would help Ramiro in any way, but nonetheless wanted to “err on the side of caution.” Even if these statements had been “advice” given to Ramiro before he pled guilty — and no one claims they were — they’re so qualified that they don’t in any way resemble the type of “affirmative misrepresentation[s]” that constitute ineffective assistance. Kwan, 407 F.3d at 1015.
“[I]t is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. That’s why we don’t decide ineffectiveness claims by nitpicking the record and asking whether we would have done it better. Because the majority does just that in this case, I dissent.