**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 09 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-15195 |
| Plaintiff - Appellee, | D.C. Nos.  1:09-cv-00559-SOM-KSC |
| v. | 1:08-cr-00294-SOM |
| ROMELIUS RAMIRO, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, Chief District Judge, Presiding

Argued and Submitted October 8, 2013
Honolulu, Hawaii

Before:  KOZINSKI, Chief Judge, and FISHER and WATFORD, Circuit Judges.

The district court erred by summarily dismissing Ramiro's motion under 28 U.S.C. § 2255.  Ramiro is entitled to relief if his counsel "effectively misled" him about the immigration consequences of his guilty plea and he was prejudiced by that misleading advice.  *See United States v. Kwan*, 407 F.3d 1005, 1014–15 (9th

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Cir. 2005), *abrogated by Padilla v. Kentucky*, 559 U.S. 356 (2010). The record, far from "conclusively show[ing] that [Ramiro] is entitled to no relief," 28 U.S.C. § 2255(b), actually supports his motion. Ramiro's counsel apparently advised him that the immigration judge would ultimately decide whether to deport him, and that receiving a lower sentence might improve his chances of avoiding deportation. In fact, however, the immigration judge had no discretion in making that decision. Allegedly acting on his lawyer's advice, Ramiro pleaded guilty to distribution of methamphetamine, which is an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(B). An aggravated felony conviction "prohibits the Attorney General from granting discretionary relief from removal," *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1682 (2013), and Ramiro had no claim for non-discretionary relief. Thus, upon Ramiro's guilty plea, the law mandated his deportation. Contrary to the misleading advice he appears to have received from his lawyer, Ramiro had no ability to persuade the immigration judge otherwise.

Ramiro also may well have been prejudiced by his counsel's objectively unreasonable performance. Prejudice requires establishing that, but for counsel's errors, there is a reasonable probability "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Nothing in the record refutes his assertion that he would have gone to trial had he

been correctly advised about the immigration consequences of his plea. To the contrary, his behavior throughout the plea proceedings demonstrates that he "placed particular emphasis" on avoiding deportation. *Id.* at 60. Indeed, the record reveals that Ramiro seriously contemplated spending an extra fifty-four days in prison solely to improve his (non-existent) chances of staying in the United States. Because pleading guilty only slightly reduced Ramiro's Sentencing Guidelines range, it is not conclusively established that he would still have pleaded guilty had he known that his guilty plea would result in mandatory deportation.

Because Ramiro has adequately alleged that his counsel's performance was both objectively unreasonable and prejudicial, and because the record does not refute but actually supports his allegations, his § 2255 motion should not have been summarily dismissed.

**VACATED and REMANDED.**

**Costs to Appellant.**

United States v. Ramiro, No. 10-15195

Chief Judge **KOZINSKI**, dissenting:

In order to survive summary dismissal, a habeas petitioner must "allege specific facts which, if true, would entitle him to relief." United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004). The only "specific fact[]" Ramiro alleged before the district court, and on appeal, was that his attorney said he "may" be deported when, in fact, he would be deported. He claims his situation is analogous to that in United States v. Kwan, 407 F.3d 1005 (9th Cir. 2005), but it's nowhere close.

In Kwan, we found ineffective assistance where Kwan's attorney assured him "that although there was technically a possibility of deportation, 'it was not a serious possibility'" when, in fact, Kwan's plea to an aggravated felony would "almost certainly" lead to deportation. Id. at 1008–09. The attorney also advised Kwan not to worry if the judge told him "that he might suffer immigration consequences" because it wasn't a real threat. Id. at 1008. Ramiro's lawyer said nothing of the sort.

Ramiro insists that his attorney was required to tell him "you will be deported," but we've never before required an attorney to guarantee the course of future legal events out of his control and I see no reason to start now. As the

district court observed, "[a]n alien convicted of an aggravated felony may be almost certain to be deported, but it would be foolish . . . to say that deportation is always unavoidable and will occur." That's why, in <u>Kwan</u>, we said an aggravated felony plea created a "<u>near</u>-certain risk of deportation" such that Kwan would "<u>almost</u> certainly" be deported. <u>Id.</u> at 1009, 1016 (emphasis added).

Ignoring Ramiro's arguments, the majority comes up with its own theory as to what bad advice Ramiro's attorney may have dispensed: The attorney "apparently advised [Ramiro] that the immigration judge would ultimately decide whether to deport him, and that receiving a lower sentence might improve his chances of avoiding deportation." Maj. op. 2. The majority claims this hypothetical advice is supported by the record. It's not.

Here's the entirety of the evidence regarding what Ramiro was told prior to pleading: Ramiro's own declaration says only that the attorney "told me that if I pleaded guilty I may be deported. He did not tell me that the crime I was charged with was an aggravated felony and that if convicted I will surely be deported." At Ramiro's plea colloquy, the court told Ramiro: "Since you are not a citizen a conviction in this case may affect your right to remain in this country." Ramiro was asked if he understood; he said that he did. Ramiro's lawyer then said, "[F]or the record, I have advised my client that he more than likely will be deported upon

completion of a sentence of incarceration."  This is nothing like <u>Kwan</u>, where the lawyer told his client that deportation "'was not a serious possibility.'"  407 F.3d at 1008.

The majority takes statements made by Ramiro's attorney at sentencing, <u>after</u> Ramiro had pled guilty and <u>after</u> the attorney told him "he more than likely will be deported" and turns them into "advice" the attorney gave Ramiro prior to entering his plea.  It does so despite Ramiro's failure to make any such claim.  But any advice the attorney had for Ramiro after he plead guilty can have no bearing on Ramiro's decision whether to plead.  The majority makes its case by disregarding the timing of the lawyer's statements.

We "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. 770, 787 (2011) (quoting <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 688 (1984)).  Such a presumption can't be reconciled with the majority's scouring of the post-plea record for hints as to what the attorney <u>might</u> have told his client prior to the plea agreement.  We're required to give the attorney's conduct the benefit of the doubt and must construe ambiguities in favor of the lawyer.  <u>See</u> <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. 1388, 1407 (2011).  The majority does neither.

But even if we were to consider what was said at sentencing, so what?  The

majority criticizes Ramiro's attorney for "apparently advis[ing] him that the immigration judge would ultimately decide whether to deport him." Maj. op. 2. This isn't an "affirmative misrepresentation," <u>Kwan</u>, 407 F.3d at 1015, it's a correct statement of the law: Ramiro couldn't be deported without the decision of an IJ. <u>See</u> 8 U.S.C. § 1229a(c)(1)(A). Where's the beef?

Nor is it fair to label Ramiro's attorney ineffective for arguing "that receiving a lower sentence might improve [Ramiro's] chances of avoiding deportation." Maj. op. 2. The attorney said, "it's our understanding that this is a deportable offense and that there is—as far as [ICE] is concerned, there's zero tolerance as far as these matters are concerned. . . . I'm not sure if [a lower sentence] is going to really make any difference as far as how it affects the issue of deportation." He repeatedly said he didn't know if a lesser sentence would help Ramiro in any way, but nonetheless wanted to "err on the side of caution." Even if these statements had been "advice" given to Ramiro before he pled guilty—and no one claims they were— they're so qualified that they don't in any way resemble the type of "affirmative misrepresentation[s]" that constitute ineffective assistance. <u>Kwan</u>, 407 F.3d at 1015.

"[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable." <u>Strickland</u>, 466 U.S. at 689. That's why we don't decide ineffectiveness claims by nitpicking the record and asking whether we would have done it better. Because the majority does just that in this case, I dissent.