**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF
AMERICA,
　　　*Plaintiff-Appellee*,

v.

YULY KROYTOR,
　　　*Defendant-Appellant.*

No. 19-16459

D.C. Nos.
2:17-cv-02404-JAM-CKD
2:03-cr-00379-JAM-CKD-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted June 8, 2020
San Francisco, California

Filed October 14, 2020

Before: Eric D. Miller and Danielle J. Hunsaker, Circuit
Judges, and Patrick J. Schiltz,[*] District Judge.

Opinion by Judge Hunsaker

---

　　[*] The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota, sitting by designation.

## SUMMARY[**]

### Coram Nobis

The panel affirmed the district court's denial of a petition for a writ of error coram nobis brought by Yuly Kroytor, a lawful permanent resident from Canada, who pleaded guilty to health care fraud and was convicted in 2005.

The government seeks to remove Kroytor from the United States because his conviction is an aggravated felony. In 2016, Kroytor filed the coram nobis petition, seeking to withdraw his guilty plea because the attorney who represented him at sentencing provided ineffective assistance by misadvising him that he could not withdraw his plea but could prevent immigration officials from finding out about his conviction and thereby avoid removal.

The panel held that Kroytor is not entitled to coram nobis relief because, after learning that the only way he could avoid removal was to challenge his conviction, he waited two years, without a valid reason, before filing his petition for a writ of error coram nobis. The panel held specifically that uncertainty or ambiguity in the law is not itself a valid reason to delay seeking coram nobis relief.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Benjamin Lee Coleman (argued), Coleman & Balogh LLP, San Diego, California; Davina T. Chen, Glendale, California; for Defendant-Appellant.

Matthew G. Morris (argued), Assistant United States Attorney; Camil A. Skipper, Appellate Chief; McGregor W. Scott, United States Attorney; United States Attorney's Office, Sacramento, California; for Plaintiff-Appellee.

**OPINION**

HUNSAKER, Circuit Judge:

Yuly Kroytor, a lawful permanent resident from Canada, pleaded guilty to health care fraud and was convicted in 2005. The government seeks to remove Kroytor from the United States because his conviction is an aggravated felony. Over many years, Kroytor tried to overcome the immigration consequences of his conviction by hiring numerous attorneys who gave him varying and often erroneous advice that he followed. In 2016, more than ten years after his conviction, Kroytor filed a petition for a writ of error coram nobis, seeking to withdraw his guilty plea because his criminal defense attorney who represented him at sentencing provided ineffective assistance of counsel by misadvising him that he could not withdraw his plea but could prevent immigration officials from finding out about his conviction and thereby avoid removal. We conclude that Kroytor is not entitled to coram nobis relief because, after learning that the only way he could avoid removal was to challenge his conviction, he waited two years, without a valid reason, before filing his petition for writ of error coram nobis.

Specifically, we hold that uncertainty or ambiguity in the law is not itself a valid reason to delay seeking coram nobis relief.

## I.  BACKGROUND

### A.  Kroytor's conviction

Kroytor became a lawful permanent resident of the United States in 1995, and within five years he owned a medical-supply company. In August 2003, a grand jury indicted Kroytor for health care fraud and aiding and abetting the same in violation of 18 U.S.C. §§ 1347(a)(1),(2). Kroytor's defense attorney knew he was a noncitizen and nonetheless urged him to plead guilty without advising him that a conviction could have adverse immigration consequences. Kroytor learned for the first time at his plea colloquy that his conviction could result in his being removed from the United States.

After his plea but before his sentencing, Kroytor hired defense attorney Daniel Behesnilian. Kroytor asked Behesnilian how his conviction would affect his immigration status and whether he would be removed. Behesnilian told Kroytor that it was too late to change his guilty plea but that he could keep immigration authorities from finding out about his conviction if he paid his restitution before sentencing and was not sentenced to jail time. According to Behesnilian, this would allow Kroytor to avoid any adverse immigration consequences from his conviction, including removal. Kroytor paid his restitution before sentencing and was sentenced to probation with no jail time, which he completed without incident.

## B. Kroytor's immigration proceedings

In 2007, Kroytor learned that Behesnilian gave him erroneous advice. As Kroytor returned to the United States from a trip to Canada, authorities questioned him about his conviction and told him it made him inadmissible to the United States. Although he was allowed to return to his home in California, Kroytor soon received a removal notice.

Thereafter, Kroytor hired a series of attorneys to represent him in his immigration proceedings. Behesnilian referred Kroytor to an immigration attorney who did nothing on Kroytor's case for a year. In 2009, Behesnilian referred Kroytor to a second immigration attorney who sought to obtain immigration relief for Kroytor based on his family relationships. In early 2014, Kroytor became concerned about his second immigration attorney's representation and consulted a third immigration attorney who told him, for the first time, that his conviction was an aggravated felony that required mandatory removal, and the only way to avoid removal was to have his conviction vacated. Shortly thereafter, a fourth immigration attorney confirmed Kroytor's removal was "virtually certain" unless his conviction was vacated.

## C. Kwan, Padilla, and Chaidez

After Kroytor's conviction became final, we decided *United States v. Kwan*, which held that *affirmatively misadvising* a client about his conviction's immigration consequences could provide a basis for an ineffective assistance of counsel claim. 407 F.3d 1005, 1015 (9th Cir. 2005), *abrogated by Padilla v. Kentucky*, 559 U.S. 356 (2010). We did not overturn our earlier-adopted rule that "an attorney's *failure to advise* a client of the immigration consequences of a conviction, without more, does not

constitute ineffective assistance of counsel." *Id.* (citing *United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003), *abrogated by Padilla*, 559 U.S. at 374) (emphasis added).

Five years later, in *Padilla v. Kentucky*, the Supreme Court went further than we did in *Kwan* and held that defense counsel's failure to inform a client about his conviction's potential immigration consequences constitutes ineffective assistance of counsel. 559 U.S. at 374. "This holding abrogated the existing rule in all ten courts of appeals that had reached this issue—including ours, *Fry*, 322 F.3d 1198—as the courts of appeals had uniformly concluded that the mere failure to advise regarding the possibility of deportation could not establish an [ineffective assistance of counsel] claim." *United States v. Chan*, 792 F.3d 1151, 1154 (9th Cir. 2015) (citing *Chaidez v. United States*, 568 U.S. 342, 350 & n.7 (2013)).

In 2013, approximately one year before Kroytor learned that the only way he could avoid removal was by vacating his conviction, the Supreme Court held in *Chaidez v. United States* that, "under the principles set out in *Teague v. Lane*, 489 U.S. 288 (1989)," *Padilla* announced a new rule that did not apply retroactively. 568 U.S. at 344. It was not clear, however, whether *Chaidez*'s holding regarding *Padilla*'s non-retroactivity under *Teague* covered both failure-to-advise claims and affirmative-misadvice claims. *See United States v. Bonilla*, 637 F.3d 980, 983–84 (9th Cir. 2011) (characterizing *Padilla* as deciding that both misadvice and failure-to-advise claims constitute ineffective assistance of counsel but not deciding retroactivity).

## D. Kroytor's coram nobis proceedings

After learning in mid-2014 that he would not be able to solve his problem through immigration proceedings,

Kroytor retained Clyde Blackmon to investigate whether he had grounds to challenge his conviction. Blackmon did not immediately file a coram nobis petition because, in light of the Supreme Court's decision in *Chaidez*, he was uncertain whether the rule we announced in *Kwan*—that affirmative misadvice about the immigration consequences of a criminal conviction constitutes ineffective assistance of counsel—applied retroactively to convictions like Kroytor's that were final before *Kwan*. Approximately a year after Kroytor consulted with Blackmon, we held that the *Kwan* rule does apply retroactively, resolving this uncertainty. *Chan*, 792 F.3d at 1155.

In May 2016, ten months after we decided *Chan* and two years after Kroytor learned his only chance to avoid removal was vacating his conviction, Kroytor filed a petition for a writ of error coram nobis in the district court. He sought to withdraw his guilty plea because his defense counsel affirmatively misadvised him that the only way he could avoid the immigration consequences arising from his conviction was to take steps to prevent the immigration authorities from finding out about the conviction.[1] Kroytor claimed that, had he known his conviction meant certain removal, he would have asked to withdraw his plea before sentencing and either negotiated a different plea or gone to trial.

The district court concluded that Kroytor was not entitled to coram nobis relief because his delay in filing his petition

---

[1] Behesnilian acknowledged that Kroytor's conviction could have adverse immigration consequences, but he misadvised Kroytor that steps could be taken to prevent immigration authorities from finding out about the conviction. Both Kroytor's coram nobis petition and appellate briefing characterize Behesnilian's incorrect statements as affirmative misadvice about his conviction's adverse immigration consequences.

was not justified. Kroytor timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we review the district court's denial of coram nobis de novo, *Kwan*, 407 F.3d at 1011.

## II.  DISCUSSION

### A.  Writ of error coram nobis

A writ of error coram nobis "affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *Id.* (internal quotation marks and citation omitted). The writ aids "those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *Id.* at 1009–10 (internal quotation marks and citation omitted). Coram nobis is an "extraordinary remedy" available "only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954). To qualify for this "extraordinary remedy," the petitioner must establish four requirements: (1) the unavailability of a "more usual remedy;" (2) valid reasons for the delay in challenging the conviction; (3) adverse consequences from the conviction sufficient to satisfy Article III's case-and-controversy requirement; and (4) an "error . . . of the most fundamental character." *Kwan*, 407 F.3d at 1011.

Here, the district court dismissed Kroytor's petition under—and the parties focus their dispute on—the second factor: whether valid reasons exist for Kroytor's delay in challenging his conviction. A coram nobis petition is not subject to a specific limitations period. *Id.* at 1012. However, petitioners are entitled to this relief only if they can "provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier." *Id.* We have not

expressly defined what constitutes a valid or sound reason. *See id.* at 1013. However, in *Kwan* we noted that courts have denied relief for unjustified delay where "the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ." *Id.*

Our caselaw further reflects that whether a petitioner can *reasonably* raise a claim is determinative of whether delay is justified. *Id.* That is, where petitioners reasonably could have asserted the basis for their coram nobis petition earlier, they have no valid justification for delaying pursuit of that claim. *See United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007). If, however, petitioners did not have a reasonable chance to pursue their claim earlier due to the specific circumstances they faced, delay during the time when such circumstances existed may be justified. *See Hirabayashi v. United States*, 828 F.2d 591, 605 (9th Cir. 1987); *Kwan*, 407 F.3d at 1013–14. Some of our sister circuits have likewise reasoned that the validity of delay depends on whether the petitioner had a reasonable opportunity to present his claims earlier. *See, e.g.*, *Ragbir v. United States*, 950 F.3d 54, 65 (3d Cir. 2020) (holding that "[w]hat matters" in determining whether delay is valid "is whether a claim can be reasonably raised"); *United States v. Castano*, 906 F.3d 458, 464 (6th Cir. 2018) (noting "*coram nobis* relief is generally not appropriate for claims that could have been raised on direct appeal").

Thus, in *Reidl* we denied coram nobis relief for unjustified delay where the grounds on which the petitioner sought relief could have been asserted in earlier proceedings. 496 F.3d at 1006. On the other hand, we have found delay was justified where a petitioner discovered new evidence that he could not reasonably have located earlier,

*Hirabayashi*, 828 F.2d at 605, and where a petitioner delayed taking action due to misadvice from his attorney that he had no reason to know was erroneous, *Kwan*, 407 F.3d at 1013–14. We have also found delay justified where the applicable law recently changed and petitioner did not have a reasonable opportunity to present the issue advanced in his coram nobis petition in his direct appeal because, at that time, the claim did not have a viable basis in view of the existing law. *See United States v. Walgren*, 885 F.2d 1417, 1421 (9th Cir. 1989).

## B.  Kroytor's reason for delay

Kroytor divides the delay between his conviction and when he filed his coram nobis petition into three time periods and argues that there are valid reasons justifying each period. We conclude that the last period of delay was not justified, and, therefore, we do not address the other two time periods.

Kroytor's last period of delay began in late 2014 when he learned that his conviction subjected him to mandatory removal, and that he could avoid removal only by having his conviction vacated. Rather than filing for coram nobis relief upon learning this information, Kroytor waited for two years. He argues this delay was justified because he was unsure whether the rule we announced in *Kwan* was retroactive, which was necessary for him to have a viable legal basis to challenge his conviction. Kroytor is correct that it was uncertain in 2014 whether *Kwan* applied retroactively and that this uncertainty remained until we issued our decision in *Chan* in 2016. *See Chan*, 792 F.3d at 1154–55. But uncertainty in the law is hardly unique. Nor does it prevent petitioners from reasonably asserting a claim for relief. *Cf. Bousley v. United States*, 523 U.S. 614, 623 (1998). If there is a reasonable basis in existing law for a claim—as there was here—a petitioner should raise it. *Cf.*

*Reed v. Ross*, 468 U.S. 1, 15 (1984); *see also Engle v. Issac*, 456 U.S. 107, 130 (1982) (holding that "the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial"). Indeed, in general, litigants may assert "claims, defenses, and other legal contentions [that] are warranted by existing law or by a nonfrivolous argument for *extending, modifying, or reversing existing law or for establishing new law*." Fed. R. Civ. P. 11(b)(2) (emphasis added).[2]

Thus, we join the Third Circuit in holding that a lack of clarity in the law is not itself a valid reason to delay filing a coram nobis petition. *See Ragbir*, 950 F.3d at 65; *Mendoza v. United States*, 690 F.3d 157, 160 (3d Cir. 2012). The petitioner in *Mendoza* was similarly situated to Kroytor and argued his filing delay was excused because he could not have known his counsel was ineffective for not advising him about the collateral immigration consequences of his conviction until the Supreme Court decided *Padilla*. 690 F.3d at 160. The Third Circuit rejected his argument because its circuit precedent had long required criminal defense attorneys to provide advice about immigration consequences and the law being "unsettled does not justify a delay in filing a coram nobis petition." *Id.*

Indeed, *Chan* demonstrates the efficacy of this rule. Chan filed her coram nobis petition after the Supreme Court decided *Chaidez*, which cast doubt on whether *Kwan* applied retroactively. *Chan*, 792 F.3d at 1153–54. The district court held that *Kwan* did not apply retroactively and dismissed her

---

[2] We have not resolved whether the civil rules apply to coram nobis proceedings. *See United States v. Taylor*, 648 F.2d 565, 573 (9th Cir. 1981). That issue was not presented in this case, and we do not decide it today.

claim. *Id.* at 1153. We reversed, concluding that *Chaidez* did not control *Kwan* and that *Kwan* did not establish a new rule of criminal procedure and thus *could* be applied retroactively. *Id.* at 1155. The uncertainty that Chan faced was the same uncertainty on which Kroytor relies. It did not prevent Chan from reasonably presenting, and prevailing on, her claim, and it does not justify Kroytor waiting *two years* to file his petition after learning that challenging his conviction was his only option for avoiding removal.[3]

For these reasons, we conclude the district court was correct that Kroytor failed to satisfy the requirements for coram nobis relief. We take no pleasure in reaching this result. The record reflects that virtually every attorney Kroytor hired failed him in some way. Before he was sentenced, Kroytor asked his defense attorney what his options were for avoiding removal, and he followed the advice given not knowing it was wrong. Once he discovered that his attorney erred, he sought more advice. It appears at least one of his attorneys made no effort to help him. He followed the varying, and incorrect, advice he got from others. And when Kroytor finally learned that his only option was to challenge his conviction, his post-conviction attorney did not act with the necessary expediency. Indeed, even after Kroytor filed his coram nobis petition, he had to discharge his first post-conviction attorney and hire a new one because no action was taken on his petition for a year and he faced imminent removal. We do not doubt that Kroytor was

---

[3] At oral argument, Kroytor's counsel also tried to justify Kroytor's 10-month delay after we decided *Chan* by asserting Kroytor needed this time to gather declarations to support his coram nobis petition. This is not a valid justification where nothing in the record indicates that Kroytor was unable to gather this information sooner.

earnest in trying to resolve his problem, but that is not determinative under the legal standard we must apply.[4]

## III. CONCLUSION

Uncertainty in the law itself does not justify delay in filing a writ of coram nobis petition where such uncertainty does not prevent a petitioner from reasonably presenting a claim for relief. Kroytor could have challenged his conviction after learning this was his only chance for avoiding removal despite not knowing whether the rule we announced in *Kwan* was retroactive because he reasonably could have advocated for such a ruling in litigating his petition. Instead he waited for two years before filing his petition, and nearly a year after we affirmatively held that *Kwan* does apply retroactively. This was unjustified delay, and, therefore, Kroytor does not meet the requirements for coram nobis relief.

**AFFIRMED.**

---

[4] Kroytor's coram nobis petition is based on a claim of ineffectiveness of the defense attorney who represented him at his sentencing. We express no opinion about whether he could seek relief based on the representation he received from any other attorney.