NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 15 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PATRICK SHIN,

               Petitioner-Appellant,

  v.

UNITED STATES OF AMERICA,

               Respondent-Appellee.

No. 21-16833

D.C. Nos.
1:20-cv-00390-SOM-KJM
1:04-cr-00150-SOM-1

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Hawaii
Susan O. Mollway, District Judge, Presiding

Submitted February 16, 2023[**]
Honolulu, Hawaii

Before: BEA, COLLINS, and LEE, Circuit Judges.
Concurrence by Judge COLLINS.

Petitioner-Appellant Patrick Shin appeals a district court order denying his

second petition for a writ of coram nobis. Shin's second petition requests that the

district court vacate the judgment entering a conviction against him for violating 18

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument. See Fed. R. App. P. 34(a)(2).

U.S.C. § 1001(a)(3), which judgment was entered after he pleaded guilty to having willfully made a false statement to the United States Navy in connection with a proposal for the completion of a naval contract. Shin believes that he merits this unusual remedy because he contends that his guilty plea was made involuntarily; namely, he argues that he would have chosen not to plead guilty and instead would have gone to trial had he been properly informed of the correct mens rea standard required for a conviction under 18 U.S.C. § 1001(a)(3). The parties are familiar with the facts of this case, so we do not recite them here. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We affirm the district court's order denying Shin's petition for a second writ of coram nobis.

1. We review the district court's denial of a writ of coram nobis de novo. *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007). But any factual findings underlying the district court's decision are reviewed for clear error. *Hirabayashi v. United States*, 828 F.2d 591, 594 (9th Cir. 1987). Namely, "we will affirm a district court's factual finding unless that finding is illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

2. For Shin to be entitled to coram nobis relief, he must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the

2

case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi*, 828 F.2d at 603. We agree with the district court that Shin has failed to demonstrate that there was an "error of the most fundamental character" in the judgment entering a conviction against him in light of his guilty plea.[1] *Id.* While Shin is correct to identify caselaw showing that a guilty plea made based on a misunderstanding of the applicable legal standard can be deemed involuntary and therefore constitute a fundamental error, *United States v. Kwan*, 407 F.3d 1005, 1014–18 (9th Cir. 2005) *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356, 370 (2010), Shin has failed to demonstrate that he was prejudiced by his not being made aware of the proper mens rea standard under 18 U.S.C. § 1001(a)(3). Namely, Shin has failed to show that there was "a reasonable probability that he would have proceeded to trial had he been properly informed of the elements of the offense." *United States v. Werle*, 35 F.4th 1195, 1202 (9th Cir. 2022). Simply, because the question of reasonable probability "is a factual question" and because Shin has failed to explain why the district court's factual findings were clearly erroneous, there was no prejudice that rendered Shin's guilty plea involuntary. *Id.*

---

[1] Although the district court also found that Shin had failed to explain why he had waited so long to raise this challenge to his conviction, which holding the government defends on appeal, we decline to evaluate the issue considering Shin fails to satisfy his burden on the fundamental error prong of the coram nobis analysis.

3. Shin is correct that the governing body of law interpreting 18 U.S.C. § 1001(a)(3) at the time of his guilty plea in 2004 applied the incorrect mens rea standard. The caselaw required the government to prove only that the defendant made the false statement "deliberately and with knowledge," *United States v. Carrier*, 654 F.2d 559, 561 (9th Cir. 1981), despite the fact that willfulness, as subsequently interpreted by the Supreme Court and recognized by this Circuit, requires the government to prove that a defendant "acted with *knowledge that his conduct was unlawful*." *United States v. Ajoku*, 584 F. App'x 824 (9th Cir. 2014) (emphasis added) (quoting *Bryan v. United States*, 524 U.S. 184, 191–92 (1998)).

4. But as the district court ably pointed out, Shin's own colloquy with the sentencing court reveals that he was fully aware that his conduct was unlawful. Shin repeatedly reiterated his understanding that his submission of inflated subcontractor bid prices was "wrong." And he admitted that his submission of false subcontractor bid prices was done with the intention of benefiting his company by permitting it to make a profit on the contract. While an individual can view something as morally wrong without believing that there is illegal activity afoot, the district court was correct to note that Shin made these concessions about his own wrongdoing in the presence of "FBI agents and federal prosecutors [who] are not searching to convict people who have committed sins or immoral acts." These observations all support the district court's sensible conclusion that Shin's repeated admission of wrongdoing

4

in the presence of governmental investigators evinced his knowledge that he had engaged in illegal activity when submitting a proposal containing inflated subcontractor bid prices.

5. Even if we were to set aside Shin's colloquy during the sentencing hearing, the district court identified other facts in the record that strongly support its conclusion that Shin knew his behavior was illegal. Shin acknowledged that he was an experienced contractor and understood the contracting process well. As a result, the district court plausibly concluded that the jury would have balked at Shin's current argument that despite his extensive federal contracting background, he was unaware of the (rather self-evident) illegality of submitting forged documents or false information to the government. And this inference is further substantiated by the fact that Shin readily admitted that he spent nearly 20 minutes with a copier to create the inflated bid price by papering over the "1" digit with a "3" to hide any evidence of his alterations from a casual observer. That alteration resulted in a demand for an additional $200,000 to be paid under the now-altered contract. An individual that takes great pains to conceal the fact that the document that he is submitting to the government was altered for the express purpose of requesting more money for a contract—especially one who has ample experience as a federal contractor and knows that he is obligated to tell the truth—is clearly aware that the submission of false subcontractor bid prices is both wrong *and illegal*.

5

6. Shin's only argument to the contrary that he could not have known he was engaged in illegal activity because he never intended to bilk the government of more money than he believed that he was owed is simply unpersuasive.

First, whether a government official viewed the proposed (but inflated) price of the contract to be fair speaks to the *materiality* element of the crime,[2] not to Shin's knowledge of wrongdoing. *Cf. United States v. Lindsey*, 850 F.3d 1009, 1013–14 (9th Cir. 2017) (reviewing whether the government actually relied on a false statement under the materiality prong of a wire fraud statute).

Second, Shin misunderstands the mens rea standard when he contends that the government was required to prove that he intended to cheat the government out of money and that a "white lie" that allows the contract to be completed before the end of the fiscal year somehow shields him from criminal liability. Quite simply, one can have knowledge of being engaged in illegal behavior while still believing that the reasons for knowingly engaging in that illegal activity are honorable: Robin Hood is often celebrated as a noble hero for helping the poor, even though he knowingly engaged in theft and grand larceny in the process. *See Dixon v. United States*, 548 U.S. 1, 5–7 (2006) (explaining that an individual can willfully lie to

---

[2] Whether there was a fundamental error in Shin's guilty plea as it relates to the materiality element of his crime is a challenge that is now foreclosed by this Court's affirmance of a district court's order denying Shin's first petition for a writ of coram nobis. *Shin v. United States*, 782 F. App'x 595 (9th Cir. 2019).

obtain a firearm even if her "will was overborne by the threats made against her and her daughters, [because] she still *knew* that she was making false statements and *knew* that she was breaking the law by buying a firearm"). Thus, Shin's repeated assertion that his reasons for lying were admirable—to ensure that the government's contract could be completed before its funding lapsed—does not negate his satisfying the mens rea of knowingly engaging in illegal activity. Namely, his motives do not undermine the strong inferences drawn from the other evidence in the record, which inferences evince Shin's knowledge that he had engaged in illegal activity: his clandestine behavior, his consistent refrain to investigators and the court that his falsifying the subcontractors' bid prices was wrong, and his acknowledgement that as a long-time federal contractor, he understood the contracting process and knew that he was required to be truthful in all submissions made to the government.[3]

---

[3] In light of Shin's misunderstanding of the mens rea standard required under 18 U.S.C. § 1001(a)(3), we see no reason to upset the district court's conclusion that the testimony from Shin and his attorney are not persuasive even though the court did not find that they were deliberately untruthful. As the Supreme Court recently explained,

> credibility and persuasiveness are closely bound concepts, [and] sometimes treated interchangeably . . . . [But i]t's easy enough to imagine that a factfinder might not describe the plaintiff as lacking credibility—in the sense that she was lying or not "worthy of belief," Black's Law Dictionary 448 (10th ed. 2014) (defining "credibility")— yet [still] find that her testimony on a key fact was outweighed by other

7. Because the district court's factual findings regarding Shin's knowledge that his wrongdoing was both morally wrong *and illegal* are well-supported by inferences drawn from the record, we conclude that Shin has failed to demonstrate that there was a reasonable probability that he would not have entered a guilty plea had he been informed that 18 U.S.C. § 1001(a)(3) required the government to prove that he knew that his falsifying of the subcontractor bid prices was illegal. Namely, Shin's own repeated admission of wrongdoing, which evinced his knowledge of illegality, forecloses any probability that Shin would have chosen not to plead guilty had his attorney or the court properly instructed him on the correct mens rea standard. *United States v. Pollard*, 20 F.4th 1252, 1257 (9th Cir. 2021) (rejecting defendant's "bare assertion on collateral review that he would not have pled guilty"

---

evidence and thus unpersuasive or insufficient.

*Garland v. Dai*, 141 S. Ct. 1669, 1680–81 (2021). Just so here: while Shin and his attorney might not lack credibility in asserting that Shin would have wanted to go to trial had the government been required to prove that Shin had a nefarious intent to cheat the Navy of money, their mistaken impression of the proper mens rea standard under 18 U.S.C. § 1001(a)(3) undermines their testimony's persuasiveness regarding the contention that Shin would not have entered a guilty plea had he been told that willfulness required knowledge of illegality. Considering the rest of the record uniformly suggests that Shin knew that his falsifying of the subcontractor bid prices was illegal, the district court did not clearly err in rejecting the testimony from Shin and his attorney as unpersuasive—their testimony carries little probative value in light of the contrary inferences drawn from the rest of the record. *Hinkson*, 585 F.3d at 1263. Thus, we conclude that the district court's holding that the failure to inform Shin of the proper mens rea standard for a conviction under 18 U.S.C. § 1001(a)(3) was harmless is well-reasoned and supported by the record.

after reviewing testimony from the defendant's original plea colloquy and concluding that the "writing [was] on the wall"). Shin therefore suffered no prejudice from the legal mistake, which means that his guilty plea was voluntary. And as his guilty plea was voluntary, Shin has failed to demonstrate that there was a fundamental error in the judgment entering his conviction for violation of 18 U.S.C. § 1001(a)(3).

Thus, Shin is not entitled to relief and the district court correctly denied his second petition for a writ of coram nobis.

**AFFIRMED**

*Shin v. United States*, No. 21-16833

COLLINS, Circuit Judge, concurring in the judgment:

I concur in the majority's judgment affirming the denial of Shin's second petition for a writ of coram nobis. But I do so on the alternative ground that the district court correctly concluded that Shin has failed to establish that "valid reasons exist for not attacking the conviction earlier." *Hirabayashi v. United States*, 828 F.2d 591, 603 (9th Cir. 1987).

Shin filed his first coram nobis petition, which raised a *Brady* issue, in September 2015. The district court denied that petition in June 2017, and we affirmed that dismissal in July 2019. *See Shin v. United States*, 782 F. App'x. 595, 596–97 (9th Cir. 2019). The Supreme Court denied review in February 2020. *See Shin v. United States*, 140 S. Ct. 1123 (2020). Shin filed the instant petition on September 11, 2020—some 16 years after his guilty plea and nearly five years after filing his first petition. In this new petition, Shin asserted for the first time that his 2004 guilty plea to a violation of 18 U.S.C. § 1001 was involuntary because he had not been informed that one of the elements of that offense is that he knew that his conduct was unlawful.

In justifying his delay in filing this second petition, Shin provided two reasons, but neither suffices.

First, Shin argued that courts in the Ninth Circuit had been slow to recognize

that, under *Bryan v. United States*, 524 U.S. 184 (1998), the scienter required to establish a violation of 18 U.S.C. § 1001 assertedly requires a showing that the defendant was aware that his conduct was unlawful. "The Ninth Circuit did not change course," he argued, until its pattern jury instructions were amended in 2016 to formally reflect that requirement. This argument fails both factually and legally. As the district court noted, the pattern instruction had actually been changed in this respect in 2014, not 2016. And as we have held, "a lack of clarity in the law is not itself a valid reason to delay filing a coram nobis petition." *United States v. Kroytor*, 977 F.3d 957, 962 (9th Cir. 2020). "If there is a reasonable basis in existing law for a claim"—even one that involves "extending, modifying, or reversing existing law or . . . establishing new law"—the "petitioner should raise it." *Id*. (emphasis omitted) (citation omitted). The legal materials cited in Shin's own petition make overwhelmingly clear that there was ample "reasonable basis" for asserting this claim long before September 2020.

Second, Shin contended that his postconviction counsel who filed his first coram nobis petition—who had also acted as his defense counsel in connection with his 2004 guilty plea—was ineffective for failing to raise the issue earlier. But as the Supreme Court recently reiterated, a petitioner seeking postconviction relief "bears the risk" for all errors made by his attorney, who is his agent, unless that assistance is *constitutionally* ineffective." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1735

2

(2022) (emphasis added) (citations omitted).  And "because there is no constitutional right to counsel in state [or federal] postconviction proceedings," that means that a petitioner "ordinarily must bear responsibility for all attorney errors during those proceedings."  *Id*.

Although *Shinn* involved a habeas petition filed by a state prisoner, its reasoning reflects not just state-federal comity concerns, but also important interests in "finality" and "the orderly administration of justice."  142 S. Ct. at 1733; *see also id*. at 1739 ("Serial relitigation of final convictions undermines the finality that 'is essential to both the retributive and deterrent functions of criminal law.'" (citation omitted)).  As such, *Shinn*'s reasoning necessarily extends to all "postconviction proceedings," including coram nobis petitions.  *See also Chaidez v. United States*, 568 U.S. 342, 348 (2013) (holding that the nonretroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989), applies to a "habeas or similar proceeding," including coram nobis); *United States v. Denedo*, 556 U.S. 904, 916 (2009) (stating that "judgment finality is not to be lightly cast aside; and courts must be cautious so that the extraordinary remedy of *coram nobis* issues only in extreme cases").  Accordingly, to the extent that our decision in *United States v. Kwan*, 407 F.3d 1005 (9th Cir. 2005), might be read to suggest that mistakes by *postconviction* counsel may justify the delayed filing of a coram nobis petition, it has been abrogated by *Shinn*.  *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003

3

(en banc).  Moreover, we squarely held in *Kroytor* that the petitioner's coram nobis petition was unjustifiably delayed despite the fact that, when the petitioner hired counsel to inquire about challenging his conviction, "his post-conviction attorney did not act with the necessary expediency" because counsel was "uncertain" about the state of the law upon which the challenge would be based.  977 F.3d at 960, 963.  As the district court here correctly observed, "[i]t is difficult to see why Shin's delay should be found justified when the delay[] by . . . Kroytor w[as] not."

I would therefore affirm the district court's denial of Shin's second coram nobis petition on the ground that Shin unjustifiably delayed in raising the claim that petition asserts.  On that basis, I concur in the judgment.